IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Mae Keith Timmons, | ) | Civil Action No.: 4:04-2197-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **O R D E R** |
| Quorum Long Term Disability Plan | ) | |
| and Continental Casualty Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court are Plaintiff's Motion to Remand, Plaintiff's Motion to Amend, and Defendants' Motion to Strike Plaintiff's Jury Demand. Both parties have fully briefed the issues presented in these motions and have stipulated that a hearing is not needed. Therefore, the Court will rule on the motions as follows:

**Background Facts and Procedural History**

At all times relevant to this action the plaintiff was an employee of Quorum Health Group of South Carolina, Inc., d/b/a Carolinas Hospital System. Plaintiff was a participant, within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(7), 29 U.S.C. § 1002(7), in the Quorum Long Term Disability Plan. On October 28, 2001, the plaintiff left work at Carolinas Hospital System, Inc., due to medical conditions including, but not limited to, a collapsed lung. Plaintiff applied for long term disability under the Quorum Long Term Disability Plan and allegedly provided the appropriate proof of loss. The plaintiff alleges that she was approved for benefits on April 17, 2002. However, the plaintiff states that on August 20, 2002, Continental Casualty Insurance Group ("Continental") denied her long term disability benefits beyond October, 2003. Plaintiff's subsequent

administrative appeal of the denial of benefits was unsuccessful.

The plaintiff filed a civil action in the State of South Carolina, County of Florence, Court of Common Pleas, Case No. 04-CP-21-1015, on or about May 28, 2004, under ERISA, as amended, 29 U.S.C. § 1001 et seq., to contest Defendants' denial of her claim for long term disability benefits. Defendants Quorum Long Term Disability Plan and Continental removed the action to this Court on July 1, 2004, pursuant to 28 U.S.C. § 1441(a) and (b), because the plaintiff alleges rights that relate to an employee welfare benefit plan. This Court has jurisdiction over the matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 (federal question jurisdiction).

## Discussion

### I. Plaintiff's Motion to Remand

Section 1331 provides that the "the district court shall have original of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "The burden of establishing federal jurisdiction is placed on the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994), citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns," the courts "must strictly construe removal jurisdiction." Id., citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941). "If federal jurisdiction is *doubtful*, a remand is necessary." Id. (emphasis added), citing In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); and Cheshire v. Coca-Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1102 (D.S.C. 1990).

The plaintiff argues in her Motion to Remand that when the defendants filed their Notice of Removal on July 20, 2004, they alleged that this Court had jurisdiction over this matter pursuant to 29 U.S.C. § 1001, et seq., ERISA, and 29 U.S.C. § 1132. Notably, 29 U.S.C. § 1132(e) provides the

Federal Court with subject matter jurisdiction over all claims for benefits due brought under ERISA. Although the plaintiff originally filed this action in state court seeking to recover damages under ERISA, she now alleges in this Motion to Remand that this Court lacks jurisdiction because the defendants removal failed to show: (1) that the disability policy at issue was "established or maintained" by the employer; and (2) that the policy is not excluded from the definition of employee benefit plan by ERISA's "safe harbor" provision.

### A)     Whether the Employer "Established or Maintained" an Employee Benefit Plan

In Custer v. Pan American Life Ins. Co., 12 F.3d 410, 417 (4th Cir. 1993), the Fourth Circuit held that for an ERISA welfare benefit plan to exist there must be: (1) a plan, fund, or program, (2) established or maintained, (3) by the employer (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries. In this case, the plaintiff argues that the defendants have failed to show removal is proper because they have allegedly not shown that the employer "established and maintained"[1] the disability policy. The plaintiff argues that the employer did nothing more than obtain the policy in its name and allow the employees to purchase coverage from the carrier if they wished. The plaintiff states that the employees participated in the plan voluntarily and paid the entire cost of the premium. Therefore, the plaintiff argues that the policy does not qualify as an employee welfare benefit plan and the defendants should be denied the protection of ERISA.

A plan is "established or maintained" when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit. Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1214 (11th Cir. 1999). In the case at bar, the uncontradicted affidavit of Katherine

---

[1] The Court notes that the requirement is established *or* maintained, not established *and* maintained as the plaintiff has discussed in her brief.

3

Buck, Assistant Vice President, Corporate Benefits for Quorum Health Group, Inc., reveals that Quorum has an extensive list of administrative duties which it performs in relation to the long term disability ("LTD") plan. Ms. Bucks states in her affidavit that Quorum negotiated the original contract with Continental. Quorum set the terms of the LTD plan, including the type of benefits available and who was eligible to participate. Quorum also reserved the right to terminate the LTD plan and reserved the right to amend or modify the terms of the LTD plan together with Continental at any time without prior notice to plan participants. Quorum also performed periodic market surveys to ensure that its LTD policy with Continental is competitive in terms of benefits provided, as well as cost. Likewise, other administrative functions Quorum performed in connection with the plan included maintaining claim and enrollment forms; answering participants' questions about the plan; assisting in preparing claims forms; and preparing and filing the Form 5500 with the Department of Labor on an annual basis. Clearly, Quorum's extensive administrative duties over the LTD plan reveal that its involvement greatly exceeded a mere passive intent to confer a benefit on its employees.

There is also the additional requirement that the plan must be established or maintained *"by the employer."* In this case, Quorum is identified in the policy as the employer. Importantly, the policy was issued not in the name of the individual plan participants but was in Quorum's name.

As an additional argument that the employer did not establish or maintain the policy in question the plaintiff points out that Continental insures the plan and makes all decision regarding benefits. The plaintiff states that the policy claims procedure indicates "any denial of claim for benefits will be provided by the insurance company" and appeals "will be held in a decision rendered by the insurance company." The plaintiff further argues that although the policy lists the employer, Quorum, as the administrator of the Plan, she points to Defendants' Answer where they allegedly *admit* that Continental

4

was, in fact, the administrator of the Plan.

The Court finds that Quorum did not admit in it's Answer that Continental is the plan administrator, only that Continental is the claims administrator. In fact, Ms. Buck's affidavit reveals as much when she states that Quorum is the Disability Plan's administrator and is responsible for the overall operation of the Disability Plan and performs all but one of the administrative functions of the plan. The one administrative function which Quorum does not perform is its discretionary authority to make all claims determinations under the Disability Plan, which it has delegated to Continental.

After having considered the extensive list of functions which Quorum performed with regard to this plan, the Court finds that the policy at issue was established or maintained by Quorum. It is clear to this Court that Quorum went beyond a mere intent to confer a benefit and therefore, the policy in question is an employee welfare benefit plan governed by ERISA.

### B) Safe Harbor Provision

The plaintiff next argues that even assuming the defendants can show that the employer established or maintained an employee benefit plan sufficient to satisfy the requirements of 29 U.S.C. § 1002(1) and Custer, the defendants have allegedly still failed to show that the policy was not excluded from preemption by ERISA's "safe harbor" provision.

In order to qualify for the "safe harbor" exception to employee welfare benefit plans, a plan must satisfy **all** of the following requirements:

(1) No contributions are made by an employer or employee organization;
(2) Participation [in] the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
(4) The employer or employee organization receives no consideration in the form of

cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3 - 1(j).

In the case at hand, the plaintiff argues that her participation in the policy was a result of her sole voluntary contribution and no contribution by the employer. The plaintiff alleges that Quorum had no involvement in the administration of the policy, submission of claims, or evaluation of claims. Plaintiff also states that the Administrative Record contains no information that the employer received any consideration in connection with the policy. Thus, the plaintiff argues that the safe harbor provision excludes the policy at issue from ERISA preemption.

The defendants admit that Quorum's activities with the disability plan satisfy the first, second, and fourth requirements of the safe harbor provision, however, they contest the satisfaction of the third element. The third element requires that the employer refrain from performing any function other than permitting the insurer to publicize the program to employees and collect and remit premiums. Butero, 174 F.3d at 1213.

The Fourth Circuit Court of Appeals recently discussed the third regulatory element of the safe harbor provision in the unpublished case of Casselman v. American Family Life Assur. Co. of Columbus, 2005 WL 1492208 (4th Cir. June 24, 2005).[2] In Casselman, the Fourth Circuit acknowledges that "[c]ourts applying the safe harbor exception have emphasized that employers can only assume a very limited role with respect to the plan if the third prong is to be satisfied." 2005 WL 1492208 at *2, citing Butero, 174 F.2d at 1213; Hansen v. Continental Ins. Co., 940 F.2d 971 (5th Cir.

---

[2] Although an unpublished opinion typically has no precedential value, this Court finds the above named case instructive when deciding the issue presented in the case at hand.

6

1991).  In Casselman, the plan administrator testified that the employer selected the type of employees who would be eligible to participate in the plan.  The employer also engaged a consulting firm to investigate the insurer.  After considering such, the Fourth Circuit found that "[b]oth determining eligibility criteria and selecting the insurance company have been found relevant to the determination of whether the safe harbor is applicable."  Id. at *3, citing Butero, 174 F.3d at 1213.  The Court noted that "[h]ere, it is clear that the limited functions outlined in the regulation-- permitting publicizing of the program, collecting premiums and remitting them to the insurer-- were exceeded by the company." Id. at *2.  Therefore, the Court concluded that "[g]iven the unequivocal language of the regulation limiting functions of the employer to the enumerated tasks, we conclude that the employer exceeded the bounds of the permissible interaction with the program under the safe harbor."  Id. at *3.

Following the Fourth Circuit's direction in Casselman, this Court will also review the Eleventh Circuit's decision in Butero for guidance in the case at bar.  In Butero, the Eleventh Circuit rejected the plaintiff's attempted application of the safe harbor provision to a group of life insurance plan offered by the plaintiff's employer.  The insured in Butero contested the satisfaction of the third element of the safe harbor provision relating to the degree of employer involvement in the plan.  The Butero Court found that the employer's involvement in selecting the insurer, deciding on key terms, such as the amount of coverage and eligibility, generating a summary plan description for the plan, and retaining the power to alter certain terms, barred application of the safe harbor provision.  174 F.3d at 1213-14.

In this case, among other things Quorum negotiated the original contract with the insurer, selected the terms of the disability plan, such as the amount of coverage available and employee eligibility, drafted and issued the Long Term Disability Summary Plan description (which included a section titled "Certain Employee Rights Under ERISA"), and reserved the right to modify or terminate

the plan. After applying the principals outlined in Casselman and Butero, this Court finds that Quorum's activities went far beyond the limited functions circumscribed in the regulation. Thus, Quorum's extensive involvement in the disability plan removes the plan from the safe harbor provision.

For the reasons stated above, the plaintiff's Motion to Remand is **DENIED**.

## II.    Plaintiff's Motion to Amend Complaint

Based on the grounds outlined in the Motion to Remand, the plaintiff filed a Motion to Amend her Complaint by removing the ERISA cause of action which she originally brought this suit under and substituting the causes of action of breach of contract and bad faith refusal to pay insurance claims. However, for the reasons outlined in the preceding section, this Court finds that plaintiff's request to remove the ERISA cause of action should be **DENIED**.

As discussed above, this Court finds that the plan in question is an ERISA plan. Yet, the plaintiff seeks to amend her Complaint by adding causes of action and seeking damages beyond any benefits which she may recover under the plan. ERISA expressly limits the amount a participant may recover to the value of any benefits provided under the terms of the plan. See Section 502(a) of ERISA, 29 U.S.C. § 1132(a). ERISA already provides an adequate remedy under Section 502(a) upon which the plaintiff can recover the damages she seeks. Therefore, the plaintiff's request to add the causes of action of breach of contract and bad faith refusal to pay insurance claims is also **DENIED**.

Although the standard under Rule 15 of the Federal Rules of Civil Procedure is to be construed liberally, an amendment should not be granted when the amendment would be futile. See New Beckley Mining Corp. v. Int'l Union, 18 F.3d 1161, 1164 (4th Cir. 1994). The amendment that the plaintiff proposes would be futile because the causes of action suggested are preempted by the remedies available through ERISA.

### III.    Defendant's Motion to Strike Jury Demand

The defendants filed this motion seeking to strike the plaintiff's demand for trial by jury from the Complaint. The plaintiff argues in response to this motion that she is entitled to a jury trial in an ERISA case.  In support of this contention the plaintiff cites the United States Supreme Court case of Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), as well as Vaughn v. Owen Steel Co., Inc., 871 F. Supp 247 (D.S.C. 1994), and Shaw v. Atlantic Coast Life Insurance Co., 470 S.E.2d 382 (S.C. Ct. App. 1996).  After thoroughly reviewing and considering the plaintiff's position, this Court does not find it persuasive.  The Fourth Circuit has clearly found that a jury trial is not available under ERISA.  Biggers v. Witter Industries, Inc., 4 F.3d  291, 298 (4th Cir. 1993); Berry v Ciba-Geigy Corp., 761 F.2d 1003, 1006-07 (4th Cir. 1985).

Therefore, the defendants' Motion to Strike the jury demand in Plaintiff's Complaint is **GRANTED**.

The Court also notes that the defense counsel stated in her Reply in support of this motion  that prior to the filing of this motion she wrote counsel for the plaintiff regarding the jury demand issue and reminded him of a prior ruling of Judge Rogers which struck the jury demand.  Defense counsel states that counsel for the plaintiff refused to withdraw the jury demand and defendants had no choice but to file a motion, memorandum, and a reply brief addressing the issue of a jury demand.  Therefore, the defendants argue they are entitled to recover the attorneys' fees incurred in having to perform these tasks.

However, after reviewing Rule 11 of the Federal Rules of Civil Procedure the Court finds that counsel for the plaintiff did not maintain the right to a trial by jury for the for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Furthermore, the Court finds that the counsel for the plaintiff asserted this legal contention in a belief that it was warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law.  Therefore, after having thoroughly considered defense counsel's request for attorneys' fees, the Court finds it should be **DENIED**.

## Conclusion

For the reasons stated above, Plaintiff's Motion to Remand (Doc. # 10) is **DENIED**; Plaintiff's Motion to Amend (Doc. # 11) is **DENIED**; and Defendants' Motion to Strike Plaintiff's Jury Demand (Doc. # 8) is **GRANTED**.

**AND IT IS SO ORDERED.**

                                               s/ R. Bryan Harwell
                                               R. Bryan Harwell
                                               United States District Judge

Florence, South Carolina
August 16, 2005